**William Duke ANDREWS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 22527.

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1968.

———◆———

Philip Mirecki (argued), Los Angeles, Cal., for appellant.

James E. Shekoyan (argued), Asst. U. S. Atty., Wm. M. Byrne, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before BROWNING, ELY and HUF-STEDLER, Circuit Judges.

PER CURIAM.

Under questioning by the court near the close of appellant's defense in his trial for violations of 18 U.S.C. §§ 495 and 1708, appellant stated that he was collecting total disability payments because of dementia praecox related to head injuries received in the armed services.

In response to the court's inquiry, appellant's appointed counsel stated that he had not been aware of appellant's condition; that appellant said "he was getting a Government check but never told me what for."

Appellant's counsel told the court that appellant had insisted upon trial against counsel's advice. Counsel continued:

> I stayed up last night trying to prepare for this case based on what he wanted. Now I realized the handicaps I have been under, and I have been appointed, your Honor.
>
> THE COURT: I understand that.
>
> COUNSEL: And he never told me about his disability.
>
> THE COURT: My only point is whether or not at the present time there is some question concerning his mental competence, because if there is why I should have him examined by a psychiatrist. My only question to you is not what you have advised him to do, which I will disavow, but whether or not he has given any indication to you that he couldn't understand the proceedings and he has been able to tell you what he wanted about this case.
>
> COUNSEL: No. He has been in fact trying to call too many shots here.
>
> THE COURT: All right. Very well.

Appellant's counsel then rested for the defense.

The case was submitted without argument. The judge, sitting without a jury, found appellant guilty. The court ordered a presentence report and continued the case for sentence for approximately thirty days, to September 18, 1967.

On that date the court, on its own motion, ordered the defendant "examined as to his competency," and continued the

case to October 9, 1967, "for hearing on competency and all further proceedings."

On September 20 the court appointed a psychiatrist, Dr. Marcus Crahan, to examine appellant and determine whether appellant had the capacity to understand the proceedings against him and assist in his own defense, and whether he "was legally insane" at the time of the commission of the offenses for which he had been convicted.

Dr. Crahan filed his report on October 9. On the same date, the court received Veterans Administration records requested by Dr. Crahan which detailed appellant's medical history. These were then transmitted to Dr. Crahan, and the hearing was continued to October 23.

Dr. Crahan's October 9 report was based upon an interview with appellant, the Veterans Administration records not then being available. Appellant's narrative, as summarized in Dr. Crahan's report, included the following recitals.

In 1944 appellant received a skull fracture from a hand grenade explosion while in the Army. Appellant was treated at several government hospitals, which he named, and at the Menninger Clinic. In May 1945 appellant was given a medical, service-connected discharge on the basis of dementia praecox. In 1953 he returned to the Menninger Clinic for six or eight months, suffering from headaches, nervous spells, blackouts, and collapse. He received shock therapy and medication. After his discharge from the Menninger Clinic, appellant engaged in professional boxing, fighting 103 bouts. He quit boxing in 1958—his license was revoked when it was learned that he was suffering from dementia praecox. Sometime between 1958 and 1960 his illness recurred. The Veterans Administration advised him to quit working, and raised his disability compensation. He began to feel better, and worked until 1964 when his headaches began to bother him again. The Veterans Administration again advised him to quit working, and he did so until June or July 1965. On two occasions, he attempted suicide, the last sometime after August 1964. The offenses with which he was charged occurred in July, August, and September of that year. He drank close to a pint of whiskey a day, "until the dizzy spells or fainting spells or pressure go away." He thought he had "a form of incompetency where I do things on impulse, and if this is true I do want to be treated." He was receiving total disability compensation.

Dr. Crahan concluded that although appellant's future prognosis was questionable, appellant was able to understand the proceedings against him, and was "legally sane" both at the time of the examination and at the time the offenses were committed.

Appellant's counsel received a copy of this October 9 report.

On October 23, Dr. Crahan filed a supplemental report based upon an examination of the Veterans Administration records. Some of the information contained in these records is described in Dr. Crahan's report, including the following.

Appellant received a head injury in September 1944 while in the Army and was hospitalized. He complained of dizzy spells and gave a history of head injuries while boxing before entering the service. X-rays taken on January 10, 1945, showed a calcified hematoma of the skull. In March 1945, appellant "was transferred to Winter General Hospital" where he remained until his discharge on May 31, 1945, with a 10 per cent disability rating based upon a "condition aggravated by service in World War II, 'encephalopathy, post-traumatic, secondary to repeated trauma to head during boxing bouts prior to induction; otitis media, right, mild.'"

On December 23, 1947, an examining doctor wrote, "He undoubtedly has sustained injury to his brain during his boxing periods and this is shown not only by his complaints but also by his X-ray of the brain and his general attitude to things. * * * This examiner

believes that a diagnosis of encephalopathy, post-traumatic, is justifiable. * * "

On August 13, 1953, appellant "was admitted for a second time to Winter Veterans Administration Hospital * * complaining of blackouts, headaches, and dizziness." The diagnosis was as follows: "Clinical impression: (a) prognosis guarded; (b) competency: the patient is incompetent; (c) disposition: continue hospitalization. Diagnosis: Schizophrenic reaction, schizoid affected type, severe, manifested by delusions of grandeur, delusions of persecution, extreme narcissism, faulty associations, tension, faulty judgment, and hypomanic behavior."

On January 20, 1954, appellant was declared 100 per cent disabled. On May 24, 1956, a Veterans Administration letter states, "The veteran's psychosis is rateable at 100% * * *."

After summarizing these and other portions of appellant's Veterans Administration record, Dr. Crahan stated that he adhered to the conclusions stated in his original report.

Appellant's counsel received a copy of Dr. Crahan's supplemental report.

On the day Dr. Crahan's supplemental report was filed, October 23, the trial court held a hearing on competency and for sentencing. The government submitted Dr. Crahan's reports. The court inquired whether appellant had any evidence to offer. Appellant's counsel stated that appellant had written a letter which appellant wished to read to the court. The court permitted appellant to read his letter. In it, appellant presented his definition of dementia praecox, "what I now suffer," and concluded, "If Dr. Marcus Crahan does not agree with the above definition then I should like the services of two other psychiatric examinations."

Appellant's counsel offered nothing more.

The court found appellant competent.

Proceeding to sentence, the court heard from appellant personally, then asked appellant's counsel if he had anything to say. Counsel replied:

I have seen the probation report and I have reviewed Dr. Crahan's report.

However, as I say, I am not completely convinced in my own mind that this man is not in need of medical care based on the previous testimony made before your Honor and also on the fact when he read this letter on the definition of dementia praecox, I could see where some of the items would fit in with Dr. Crahan's report.

Accordingly I would submit that your Honor would in his sentencing provide for some medical care for this defendant.

Appellant's counsel then stated in response to the court's inquiry that there was no legal reason why sentence should not be pronounced. The court proceeded to sentence appellant to a total imprisonment of ten years, and a fine of $1,500. The sole specification of error is that the trial court's finding of competency to stand trial was arbitrary and unwarranted because the court simply adopted the conclusion of Dr. Crahan as its own judicial determination.

The trial judge is not to be faulted. It was the trial judge who brought appellant's disability to light. It was the trial judge, on his own motion, who initiated the inquiry into appellant's competency, secured the services of a psychiatrist, and set the matter for hearing. The trial judge had nothing but the appointed psychiatrist's reports to base his decision upon, for nothing else was presented to the court.

Appellant's counsel does not fare so well. He made no pretrial inquiry into appellant's disability, though reason for inquiry had been fairly presented to him. When appellant's condition was disclosed on the record at trial, counsel made no request for a continuance to enable him to investigate but simply rested appellant's defense. Cf. Brooks v. State of Texas, 381 F.2d 619, 622–623 (5th Cir. 1967); Hintz v. Beto, 379 F.2d 937,

941–942 (5th Cir. 1967). He did not move, then or thereafter, for an inquiry into appellant's competency to stand trial, or his mental capacity to commit the offense, although the necessity for such inquiry was obvious. Counsel offered no evidence to assist the court in its determination of these critical issues, either by examination of Dr. Crahan or by offering proof of independent facts and opinion. Because of counsel's defaults, the many questions suggested by the factual recitations in Dr. Crahan's reports relating to appellant's condition went unanswered, and the record was wholly inadequate for a proper determination of the issues presented.

Ordinarily, adequacy of representation can be determined only by a hearing directed to that issue at which evidence is produced relating to facts outside the trial record. Here, however, it appears from the face of the trial record that counsel's efforts fell below minimum constitutional standards.

Reversed and remanded.