**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**McArthur EDWARDS, aka Edwards Mc-
Arthur and Charles Darnell Ward,
Defendants-Appellants.**

No. 72-3829.

United States Court of Appeals,
Fifth Circuit.

⁰ Jan. 28, 1974.

Rehearing Denied March 7, 1974.

———◆———

Michael R. Schumacher, Atlanta, Ga., Ben Atkins, Atlanta, Ga., for McArthur Edwards.

Marvin J. Zagoria, Atlanta, Ga., for Charles D. Ward.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., J. Worth Owen, Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Farmer's Bank of Malone, Florida was held up on the morning of August 14, 1972 by three Negro males who escaped in a taxicab with almost 43,000 dollars. Within four hours officers arrested Charles Pierce and Willie Lee Ward, Jr. at the home of Priscilla Hearn, a local resident. At the time of arrest they recovered 16,900 dollars of the loot and several items of incriminating paraphernalia connected with the robbery. McArthur Edwards was arrested that afternoon and Charles Darnell Ward, the brother of Willie Lee Ward, was apprehended two days later in Atlanta, Georgia. All four men were jointly indicted for conspiracy to rob and robbery of the bank. Pierce and Willie Ward pled guilty to the charge of bank robbery and were sentenced to 20-year terms of imprisonment. Edwards and Charles Ward were jointly tried on a two-count indictment before a jury that found Edwards guilty on both counts, for which he received concurrent sentences of 20 and 5 years. Ward was acquitted of the substantive offense, but was convicted on the conspiracy charge, for which he received a five-year sentence. Because the issues raised by each are completely different, we will discuss the appeals of Ward and Edwards separately.

I.

Charles Ward contends that the district court erred in denying the motion for a judgment of acquittal he made when the government rested its case. Alternatively, he contends that the evidence adduced against him at trial cannot, as a matter of law, support his conviction.

The government's evidence against Charles Ward was as follows. Edward Calloway, a taxidriver in Malone, testified that three Negro males waylaid him and stole his cab shortly before the robbery and that one of these highwaymen resembled Charles Ward. Leo Robinson, another Malone taxidriver, testified that on the afternoon of the robbery he picked up an unusual 100-mile fare to the Albany, Georgia bus station from a man answering Charles Ward's description, who was carrying a grocery bag similar to those used in the robbery. The prosecution also proved that Ward's latent fingerprint had been discovered on one of the money wrappers found in the grocery bags that had been seized in Priscilla Hearn's house at the time of the arrest of Willie Ward and Charles Pierce. The cache discovered there also included masks, weapons and other paraphernalia that were definitely connected with the robbery.

After the government had rested, Edwards, testifying on his own behalf, stated that Ward had driven with him from Atlanta, Georgia to Marianna, Florida (a town near Malone) on the night preceding the robbery, had been present in Edwards' motel room there when Pierce and Willie Ward had discussed the forthcoming robbery in nearby Malone, and had accompanied Edwards to the home of Priscilla Hearn (who was Edwards' aunt) after the crime and at a time prior to the arrest of Pierce and Willie Ward at the residence. Ward's proof consisted entirely of the testimony of one government witness whom he recalled. The record on appeal does not disclose that his retained counsel ever subsequently renewed

Ward's motion for judgment of acquittal that had been made and denied at the time the prosecution rested its case.

■ The formulation of a proper test for appellate review must consider both that all of the evidence against Ward is circumstantial and that his conviction is for conspiracy. Ordinarily, "[o]n a motion for judgment of acquittal, the [appellate] test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. . . . [I]n criminal cases based on circumstantial evidence our task is to determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence." United States v. Warner, 441 F.2d 821, 825 (5th Cir. 1971) (citations omitted), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1972); United States v. Jones, 486 F. 2d 1081 (5th Cir. 1973); United States v. Martinez, 486 F.2d 15 (5th Cir. 1973). Weighing the sufficiency of the evidence in such a case does not depend upon whether "in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude." United States v. Fontenot, 483 F.2d 315, 321 (5th Cir. 1973).

■■ To establish the essential elements of a conspiracy, the proof must show Ward agreed with one or more other persons to combine efforts to rob the bank, and it must show an overt act by one conspirator in furtherance of that agreement. United States v. Warner, *supra*. "Proof of the illegal agreement itself may rest upon either direct evidence or upon inferences drawn from relevant competent circumstantial evidence, usually the acts and declarations of the conspirators themselves, . . . and once the illegal conspiracy has been established, only 'slight evidence' is required to connect an individual defendant with the conspiracy . . . ." United States v. Fontenot, *supra*, 483 F.2d at 321 (citations omitted); United States v. Lee, 483 F.2d 968 (5th Cir. 1973).

■ The proof in the case at bar clearly shows the existence of both an illegal agreement to rob this bank and overt acts by members of that conspiracy in furtherance of the plan. The close question is whether slight evidence was adduced to connect Ward with the conspiracy. The government urges that the two taxidriver identifications, Ward's travel to Florida and his presence in the motel room during the conspiratorial conclave, his trip with Edwards to the Hearn residence shortly after the robbery and Ward's latent fingerprint on the money wrapper cumulatively, if not separately, are enough to complete its case. We agree. While each item of proof as to Ward, if standing alone might be too weak to support a conviction, their cumulative impact constitutes more than the slight proof necessary to connect Ward with the planning and execution of the robbery.

■ The cab drivers testified that on the day of the robbery a man who possessed a physical resemblance to Ward was involved in separate incidents, each of which was probatively related to the crime. The identifications were far less than positive and neither separately nor together do more than suggest that one of the three active participants in the robbery could have been Ward. Edwards' testimony was contradictory, self-serving, confused and confusing; nevertheless, it placed Ward at the Marianna hotel room parley and at the Hearn home at critical times. However, parts of Edwards' testimony were intended to exonerate Ward. Edwards claimed that when the robbery scheme was brought up for discussion at the pre-dawn motel room gathering Ward had said, "You're crazy" and had gone to sleep without indicating any intention to join the conspirators. Furthermore, Edwards testified that five men had

been present at this motel planning session. The weight the jury chose to assign to these parts of this story was within their province. They did not have to credit Edwards' entire story in order to believe any part of it. Wyatt v. United States, 263 F.2d 304 (5th Cir. 1959), aff'd, 362 U.S. 525, 80 S.Ct. 901, 4 L.Ed.2d 931 (1960). They could choose to accept as fact that Charles Ward had traveled from Atlanta, Georgia to the Florida conference site without also believing that he made this special trip, only to sleep through the strategy meeting. Similarly, they could doubt that a fifth man—assertedly the leader of the conspiracy—was present, in view of Edwards' inability to supply that yet unknown person with any identification stronger than a name and the fact that every other bit of proof indicated that a maximum of four persons were involved.

If the jury believed that Charles Ward was present when the bank robbery was planned, could have been one of the men who stole Calloway's taxi to use for the getaway, was with the confessed robbers after the crime and before their arrest, touched a money wrapper that was almost certainly taken from the bank, and met the description of a man who was in such a hurry to leave Malone with a grocery sack that he used a taxi to make a 100-mile trip, they were certainly possessed of more than slight evidence establishing that Ward was beyond a reasonable doubt guilty of conspiracy to rob the bank.

■ Guilt may not be inferred from mere association. "Mere knowledge, approval or acquiescence in the object or purpose of a conspiracy does not make one a conspirator." United States v. Thomas, 468 F.2d 422, 425 (10th Cir. 1972), cert. denied, 410 U.S. 935, 93 S. Ct. 1389, 35 L.Ed.2d 599 (1973); Causey v. United States, 352 F.2d 203, 207 (5th Cir. 1965). The proof in this case

showed much more than that as to Charles Ward. Six fingerprints were ultimately identified on six different money wrappers all recovered, along with other items from the robbery, at Priscilla Hearn's. Four of the prints belonged to Willie Ward, and one each to Charles Pierce and Charles Ward. The recaptured money wrappers bore only a stamp of a date and amount of currency. They were not identified with the name of Farmer's Bank of Malone. Yet all were similar to each other and were of the type stolen there. At the least, Charles Ward's print verifies that portion of Edwards' account which placed Ward with his brother and Pierce at a time immediately after the robbery when they were still in possession of the illicit proceeds. A reasonable juror could also believe that it established that Charles Ward had handled a portion of the stolen funds.

■ Ward's retained counsel did not renew his motion for judgment of acquittal at the close of all the evidence.[1] By proffering additional testimony in Ward's defense, reliance upon any error in the district court's denial of his motion at the close of the prosecution's case was waived. United States v. Jackson, 444 F.2d 1389 (5th Cir. 1971); United States v. Rawls, 421 F.2d 1285 (5th Cir. 1970); see United States v. Calderon, 348 U.S. 160, 164 n.1, 75 S.Ct. 186, 188 n.1, 99 L.Ed. 202 (1954); 2 C. Wright, Federal Practice and Procedure: Criminal § 463 (1969); see also McGautha v. California, 402 U.S. 183, 215–216, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). This waiver casts our review in the mold of one which searches the entire record to determine whether the conviction would amount to a manifest miscarriage of justice, see the cases collected in United States v. Jones, supra, and United States v. Andrews, 431 F.2d 952 (5th Cir. 1970); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir.

1. The record on appeal contains no transcript of any trial court proceedings after the close of the evidence. No entry reflecting a motion for acquittal after all proof is reflected by the docket or by any written pleading on file.

1969); Smith v. United States, 403 F.2d 689 (5th Cir. 1968); or for plain error, United States v. Wallace, 417 F.2d 522 (5th Cir. 1969).

We find no such miscarriage or error here for the cumulative effect of the circumstances disclosed by this record are more than sufficient to support the jury's determination that slight evidence had been shown which connected Charles Ward with this conspiracy.

## II.

Edwards' case presents a more complex procedural posture. Prior to trial his court-appointed counsel requested a severance and separate trial. In addition, on the basis of a previous mental examination and reports from Edwards' counsel in another case, he asked the district court under the applicable provisions of the Criminal Justice Act, 18 U.S.C. § 3006A(e),[2] to appoint a qualified psychiatrist at government expense to assist him in preparing Edwards' defense. The district judge refused to sever but granted the motion under § 3006A(e) and appointed Dr. Royce Jackson. Dr. Jackson examined Edwards and filed a report of his examination with the clerk of court in which he diagnosed Edwards as "an immature personality" exhibiting "simple schizophrenia with depression, sociopathic tendencies, religiosity and passive dependent features." He opined that "the defendant was competent at the time of the commission of the alleged offense, although there is no exact way to tell this without having been present at the time" and further stated that Edwards understood the nature of the charges against him and would be able to aid in his defense. On the basis of this psychiatric evaluation, the district court entered an order adjudging Edwards competent to be tried within the purview of 18 U.S.C. § 4244[3] and ordering him to stand trial.

2. (e) *Services other than counsel.—*
 (1) *Upon request.*—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.
 18 U.S.C. § 3006A(e) (Supp.1973).

3. *Mental incompetency after arrest and before trial*
 Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.
 18 U.S.C. § 4244.

In challenging the denial of his motion for severance and a separate trial Edwards does not attack the propriety of his initial joinder with the co-defendants in the indictment. Since both appellants were alleged to have conspired to commit and to have committed precisely the same crime, the joinder was clearly within the ambit of Fed.R. Crim.P. rule 8(b). The error is alleged to have occurred in failing to grant a severance.

The general rule is that persons jointly indicted should be tried together, especially in conspiracy cases. "A mere showing of some prejudice has usually been insufficient, for qualitatively it must be the most *compelling* prejudice against which the trial court will be unable to afford protection." United States v. Perez, 489 F.2d 51, at 65 (5th Cir. 1973) (emphasis in original). Consequently, the district judge was called upon to make a determination under Fed.R.Crim.P. 14 whether a joint trial would be compellingly prejudicial. "The appellate review of the exercise of that discretion is extremely narrow and the trial judge's discretion will not be disturbed unless movant makes a positive showing that he has been prejudiced by the ruling." United States v. Kershner, 432 F.2d 1066, 1071 (5th Cir. 1970).

United States v. Martinez, *supra*; United States v. Nakaladski, 481 F.2d 289 (5th Cir., 1973); United States v. Levrie, 445 F.2d 429 (5th Cir. 1971). Edwards now asserts that his insanity defense made out a case of such compelling prejudice as to demonstrate reversible error. The problem for this claim is that Edwards never raised or suggested his insanity as a defense at any point in the proceedings subsequent to his initial motion and the report by Dr. Jackson. Hence, any suggestion that he was somehow prejudiced before the jury because the issue of his sanity formed a part of his defense is patently frivolous. "Demonstrating that the judge abused his discretion in denying a motion for severance requires more than the suggestion that a separate trial might have offered a better chance for acquittal." United States v. Bullock, 451 F.2d 884, 889 (5th Cir. 1971); United States v. Perez, *supra*. Weighing the benefits of judicial economy against the absence of any hint of prejudice against him, the trial judge correctly denied Edwards' motion for severance and separate trial. *See* United States v. Carlson, 423 F.2d 431, 435–436 (9th Cir. 1970); United States v. Satterfield, 410 F.2d 1351, 1353 (7th Cir. 1969) (bifurcation of the insanity defense).

Edwards next contends that the manner in which his Section 3006A(e) motion for appointment of a psychiatrist was handled evinced district court error because it denied to him the psychiatric assistance authorized by the statute.[4] In the same vein he asserts that the failure of his court-appointed counsel to present an insanity defense at trial denied him his Sixth Amendment right to effective assistance of counsel. Citing United States v. Hamlet, 456 F.2d 1284 (5th Cir. 1972), he argues that the district court's action in ordering him to trial on the basis of Dr. Jackson's determination of his sanity operated effectively to deny his Section 3006A(e) motion. In *Hamlet* a psychiatrist had been appointed at the government's request pur-

4. In view of our disposition of Edwards' other assertions of error, we do not reach his contentions that the trial court erred (1) in precluding jury consideration of his insanity defense on the basis of Dr. Jackson's pre-trial report of his psychiatric examination of the defendant, (2) in not raising sua sponte the issue of defendant's mental competency when Dr. Jackson's diagnosis raised doubt thereto under the standard set forth in Blake v. United States, 407 F.2d 908, 916 (5th Cir. 1969), *see, e. g.*, Mims v. United States, 375 F.2d 135, 140 (5th Cir. 1967), and (3) in denying his motions for judgment of acquittal N.O.V. and for a new trial. Edwards' counsel on appeal has made an *ex parte* tender of additional medical evidence of his client's psychiatric history not submitted to the court below. We decline to consider on this appeal any matters outside the record. Our function is to review cases, not to try them *de novo*.

suant to Section 4244 to determine Hamlet's competency to stand trial. At a pre-trial hearing that psychiatrist testified that Hamlet was competent to stand trial and the court found competency to exist. Thereafter the trial court, based on its Section 4244 action, denied relief under Section 3006A. This court held that the appointment of a psychiatrist under Section 4244 "falls short of fulfilling the role of an expert selected under Section 3006A(e) whose responsibility is to assist the defense, and of one appointed under Rule 28, whose participation is expected to be wholly objective." We held that the trial court erred in denying Hamlet's Section 3006A(e) motion without conducting the ex parte inquiry required by the statute.

The case at bar is distinguishable from *Hamlet*. Although it is apparent that the two district judges (one handled pre-trial procedures and the other conducted the trial) confused Edwards' Section 3006A motion with the proceedings contemplated by Section 4244, it is undisputed that Edwards' Section 3006A motion was granted and that a psychiatrist was appointed who examined and evaluated Edwards. Just why Dr. Jackson reported his findings to the court, thus making them available to both parties rather than giving his report to Edwards and his counsel alone remains a mystery. The problem with faulting the trial court for the resulting mixup is that no objection was ever raised to this action as a procedural mistake.

The government argues that any error here was harmless since the psychiatrist and his findings were indeed available at all times before trial to assist Edwards' counsel in preparing his defense. It therefore contends that the Section 3006A(e) motion was simply abandoned by counsel rather than being implicitly or explicitly abridged by the court's subsequent actions under Section 4244.

However, we do not reach that contention. The very same default that excuses the court requires that we carefully explore Edwards' claim here that he was denied his Sixth Amendment right to ef-

fective assistance of counsel at trial. Edwards' appointed attorney initially requested the trial court also to appoint a psychiatrist under Section 3006A(e) "to examine defendant" and "to assist his counsel in the defense of his case." In an accompanying affidavit, counsel cited (1) the report of a previous examination of defendant to determine his competency to stand trial, (2) counsel's personal conversations with defendant which evidenced "certain psychiatric problems" that could well have existed when the crime was committed, (3) the representations of Edwards' former counsel in a prior criminal case who had encountered "similar psychiatric problems" indicating the possibility of legal insanity, and (4) his belief that psychiatric assistance was essential for Edwards' defense. In addition, counsel pointed out that the physician who conducted the antecedent examination had noticed "a marked improvement" in Edwards' condition, and that this tended to indicate that Edwards' competency to stand trial would not be determinative of his competency or legal sanity at the time the offense was committed.

The district judge who handled the pre-trial motions consolidated the motion for severance with the request "for appointment of a qualified psychiatrist at government expense to conduct an independent mental examination of defendant to determine [Edwards'] competency at the time of the commission of the alleged offense." The court expressly granted the Section 3006A(e) motion and ordered that Dr. Jackson be appointed to examine Edwards at government expense and to serve as an expert witness. However, after Dr. Jackson made the results of his examination available to the court rather than confidentially reporting his findings to the party he was appointed to assist, the court entered an order based on this report, which was described as having been filed with the court "as directed by the Court." That order adjudicated that Edwards was competent to stand trial *under Section 4244* and directed that his

trial proceed. As stated, Edwards' counsel never again raised or suggested the issue of insanity or imcompetency or objected to the court's treatment of the matter as one under Section 4244 prior to or during the trial on the merits.

The perplexing course of events following the court's adjudication that Edwards was entitled to the benefits of Section 3006A demonstrates that Edwards never received the full fruits contemplated by that statute. The court's handling of his request for expert assistance reflected either an inadvertent error or a basic misunderstanding of the function performed by a psychiatric expert appointed to assist defense counsel under the Criminal Justice Act. In United States v. Theriault, 440 F.2d 713 (5th Cir. 1971), cert. denied, 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973), this court discussed the varying roles performed by psychiatrists who are appointed to assist the court or the parties under several distinct enabling statutes.

Sec. 4244 concerns examination to determine if the defendant is competent to stand trial. The court appoints a psychiatrist who examines the accused and reports to the court. Rule 28 authorizes the court to appoint its own expert witness, who is expected to be neutral and detached. He advises the parties of his findings. See Rule 28 and Wright, Federal Practice and Procedure, § 452. The § 3006A(e) expert fills a different role. He supplies expert services "necessary

to an adequate defense," which embraces pre-trial and trial assistance to the defense as well as availability to testify. His conclusions need not be reported to either the court or the prosecution.

440 F.2d at 715. A Section 3006A(e) psychiatrist is appointed solely to serve the interests of the defendant. Although Edwards received a psychiatric examination as a result of the trial court's action, the record fails to show that he was ever assisted in preparing for trial. Section 3006A(e) provides that its benefits may be secured in ex parte proceedings with the same confidentiality expected of a private doctor-patient relationship. Obviously Dr. Jackson mistakenly thought that his findings were to be communicated to the court and the prosecution. Dissemination of information critical to the defense permits the government to enjoy unauthorized discovery which is forbidden under our concept of criminal procedure and the statute.[5] Moreover, although the order directing appointment of the expert is well within the sound discretion of the district judge,[6] the statute indicates that the court's function is to determine whether such aid is necessary. If necessity is found to exist then the court "shall authorize counsel to obtain the services." Except in unusual circumstances the choice of a particular practitioner should be left to counsel.[7]

---

5. See United States v. Sutton, 464 F.2d 552 (5th Cir. 1972); Marshall v. United States, 423 F.2d 1315 (10th Cir. 1970).

6. For a discussion of the standards that district judges should employ in disposing of § 3006A(e) motions for expert psychiatric assistance see United States v. Chavis, 155 U.S.App.D.C. 190, 476 F.2d 1137 (1973); United States v. Theriault, supra.

7. We note that the Fourth Circuit has adopted an advisory policy for the guidance of its judges in such situations.
By a way of guidance to the district judges, we suggest that ordinarily the appointment of a psychiatrist under 18 U.S.C. § 3006A should be with the advice and ap-

proval of counsel for the particular defendant. Unless some reason affirmatively appears, and is reflected in the record, we think that the psychiatrist preferred by the defendant should be selected by the court. See United States v. Schappel, 144 U.S.App. D.C. 240, 445 F.2d 716 (1971); United States v. Taylor, 437 F.2d 371 (4th Cir. 1971). We do not hold that the district judge must always appoint a psychiatrist chosen by a defendant, but we think he should ordinarily do so. We assume, of course, that if the psychiatrist of defendant's choice is appointed by the court, that the court will also require the defendant to submit to examination by a psychiatrist of the government's choice. If the district

Did counsel make some unexplained and indiscernible strategic decision not to follow through on the court's grant of his motion? Or did counsel fail to understand or appreciate the significance of his client's rights under this part of the Criminal Justice Act? Regardless of which conjecture is correct, did this inaction amount to deprivation of Sixth Amendment assistance of counsel? The answer is not easy.

"The actual standard of incompetency applied by the overwhelming majority of courts is stated as follows: Incompetency of counsel such as a denial of due process and effective representation of counsel must be such as to make the trial a farce, sham, or mockery of justice." [Citation omitted.] This Court has defined "effective counsel" in terms of a "reasonable counsel" standard: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." MacKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592.

Brown v. Beto, 377 F.2d 950, 957–958 (5th Cir. 1967), *quoted in* King v. Beto, 429 F.2d 221, 225 (5th Cir. 1970). *See also* McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449, 25 L. Ed.2d 763 (1970). "It is the particular facts in each case—the actual conduct of the attorney with relation to his client from arrest to final judgment—that determines whether the attorney has provided the constitutionally required effective assistance of counsel." Chalk v. Beto, 429 F.2d 225, 226 (5th Cir. 1970). *See* United States v. Katz, 425 F.2d 928, 930 (2d Cir. 1970).

This court has long recognized a particularly critical interrelation between expert psychiatric assistance and minimally effective representation of counsel. For example, in Bush v. McCollum, 344 F.2d 672 (5th Cir. 1965), we held that a state defendant, who had previously been adjudicated insane and whose pre-trial motions for institutionalization or appointment of a psychiatrist were denied, was deprived of both a fair trial and effective assistance of counsel when the state court found him guilty and sentenced him to life imprisonment without the benefit of any psychiatric testimony. In so ruling, we approved the following language in the district court's opinion:

In order for Bush in the instant case to have the effective aid of counsel, it was necessary for his counsel to have the assistance of a qualified psychiatrist and a trial, without expert evidence as to sanity, which found him sane and resulted in a life sentence is so lacking in fairness as to be a denial of liberty without due process of law, contrary to the Fourteenth Amendment.

231 F.Supp. 560, 565 (N.D.Tex.1964).

Similarly, in Hintz v. Beto, 379 F.2d 937 (5th Cir. 1967), the trial court denied the motion of a defendant, who had a long history of mental instability, for continuance despite the fact that his counsel did not receive the results of a psychiatric examination of the defendant until the trial was about to commence. We held that the right to counsel afforded under the Sixth Amendment means the effective assistance of counsel and effective assistance requires time for preparation. The *Hintz* court stated: "Time for preparation, where mental competency is in question and there is a fair factual basis as here for the question, would at least include a reasonable time within which to have a defendant examined, and for preparation of such defense as might be based on the facts developed by the examination."

judge, for sufficient reason, prefers to participate in the selection process, it would ordinarily be within his discretion to require the defendant to nominate two or three doctors from whom the judge may then ap-

point one—assuming multiple availability of psychiatrists in a given division. United States v. Matthews, 472 F.2d 1173, 1174–1175 (4th Cir. 1973). *See also* United States v. Bass, 477 F.2d 723 (9th Cir. 1973).

379 F.2d at 941. Further, we expressed the view that even the report of an examination which concludes that the defendant is sane "may not obviate defendant's Federal constitutional right to have a lawyer who has an opportunity to prepare his defense and that this right would include time for studying and evaluating the report." 379 F.2d at 942.[8]

Finally, we are guided by Greer v. Beto, 379 F.2d 923 (5th Cir. 1967). Greer had a long history of mental instability. He was found to be sane by a jury at a preliminary sanity trial on the basis of the expert testimony of a medical doctor not formally trained in psychiatry. Greer was represented by a different court-appointed attorney at the subsequent trial on the merits. We found that a prima facie case of inadequate assistance of counsel had been established based upon (1) his trial attorney's failure to offer medical testimony after the issue of defendant's sanity was submitted to the trial jury, (2) counsel's introduction into evidence of the jury verdict in the sanity trial, and (3) counsel's complete lack of knowledge about the defendant's prior psychiatric examinations.

 Consistent with these principles, other circuits as well as our own have evaluated whether counsel for mentally suspect defendants erred in failing to investigate or pursue a defense of insanity or incompetency to stand trial by appraising the facts known and available or with minimal diligence accessible to defense counsel and determining whether those facts raise reasonable doubt as to the defendant's mental condition.[9] In

many cases, of course, trial tactics could dictate an attorney's decision not to rely upon or advance an insanity defense. Courts hesitate to fault such decisions by facile hindsight, because opinions could readily differ between lawyers and judges as to the proper strategic course to follow in varying circumstances.

 In the present case, however, the error attributed to Edwards' counsel lies not in any failure to present the insanity defense at trial—a decision that may have been dictated by Dr. Jackson's report—but in failing to pursue his successful Section 3006A(e) motion and to object when subsequent proceedings made it evident that the court was treating the matter as though it arose under Section 4244. The result was that Edwards, who had been adjudged to be statutorily entitled to the benefit of psychiatric help under the Criminal Justice Act, received only a portion of the assistance that was the predicate for the initial request his counsel addressed to the court. Moreover, the doubts about Edwards' mental competency that counsel himself had raised in his affidavit supporting the motion simply could not have been so clearly resolved by the report of Dr. Jackson's examination as to justify a complete abandonment of the § 3006A(e) motion.

We are unwilling to hold that Edwards' counsel was so lacking in ability as to make his trial a farce, a sham or a mockery of justice. The record reflects, much to the contrary, that his representation was professional and adequate. The problem reduces itself to that part of the record related to the critical issue of sanity and more narrowly to adequate

---

8. "Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it if necessary in order meaningfully to advise the accused of his options." Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1968).

9. *See* United States ex rel. Marcelin v. Mancusi, 462 F.2d 36 (2d Cir. 1972); Lee v. Wainwright, 457 F.2d 771 (5th Cir. 1972); United States v. Spenard, 438 F.2d 717 (2d Cir. 1971); United States v. Mancuso, 423

F.2d 23 (5th Cir. 1970), cert. denied, 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1971); Andrews v. United States, 403 F.2d 341 (9th Cir. 1968); Owsley v. Peyton, 368 F.2d 1002 (4th Cir. 1966); Tahl v. O'Connor, 336 F.Supp. 576 (S.D.Calif.1971), aff'd, 460 F.2d 1068 (9th Cir. 1972), cert. denied, 409 U.S. 1042, 93 S.Ct. 536, 34 L.Ed.2d 493 (1973); United States ex rel. Johnson v. Brierley, 334 F.Supp. 661 (E.D.Pa.1971); Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo.1969).

psychiatric assistance in relation to that issue. In the cold light of the written record of this proceeding we cannot say that Edwards received "counsel reasonably likely to render *and rendering* reasonably effective assistance." Accordingly, we reverse his convictions and remand his case to the district court for a new trial.

In conclusion it is well to emphasize that we do not make or intimate any decision on any facet of such retrial proceedings. We mean to leave counsel for Edwards free to conduct his defense in such manner as his professional judgment dictates. The district court is to remain equally unfettered from prejudgment on our part in ruling on any pretrial or trial phases of such defenses as may be offered, including Edwards' sanity at the time of the offense or his mental ability to stand trial again.

Affirmed as to Charles Darnell Ward; reversed and remanded as to McArthur Edwards.