**McArthur EDWARDS,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

No. 85–8144.

United States Court of Appeals,
Eleventh Circuit.

Aug. 6, 1986.

Gary J. Toman, Atlanta, Ga., for petitioner-appellant.

Gerrilyn G. Brill, Asst. U.S. Atty., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge:

Appellant on December 9, 1983, filed a petition under 28 U.S.C. 2255 collaterally attacking his conviction after jury trial on fourteen counts of mail fraud in violation of 18 U.S.C. 1341 by submitting fictitious claims to the insurance carrier of Fulton County's group medical insurance plan. He was sentenced by Judge Richard C. Freeman on November 5, 1982, to 21 years (5 years consecutively on each of counts 1–4, and 1 year on count 5; 5 years concurrently on each of counts 6–14). Edwards is

---

* Honorable Edward Dumbauld, Senior U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

a voluminously verbose litigant. The docket entries fill 19 pages. His nine grounds [1] in support of his § 2255 claim were thoroughly considered in the 25 page report of Magistrate John E. Dougherty dated January 11, 1985, and adopted by Judge Robert L. Vining, Jr., on February 6, 1985.

We note that some [2] of the grounds asserted are precluded by this Court's rulings in *U.S. v. Edwards,* 716 F.2d 822, 824–26 (11th Cir.1983) upholding his conviction and sentence. Likewise appellant's contention that he should have been afforded substitute appointed counsel because of his disagreements with his original and capable appointed counsel [3] is foreclosed by the Supreme Court's holding in *Morris v. Slappy,* 461 U.S. 1, 3–14, 103 S.Ct. 1610, 1612–18, 75 L.Ed.2d 610 (1983).

The main thrust of appellant's argument seems to be that by reason of ineffective assistance of counsel he was prevented from presenting an insanity defense. This contention too is untenable.

Nothing prevented appellant from pursuing an insanity defense if he so desired, when he was sole *dominus litis* after his decision to proceed *pro se.* He was well schooled in the intricacies of the insanity defense, having succeeded in winning a new trial on that ground in a bank robbery case in 1974, *U.S. v. Edwards,* 488 F.2d 1154, 1164–65 (5th Cir.1974).

Not having raised at the trial the question of accountability, appellant can not subsequently argue *Durham* and *McNaghten* [4] questions relating to his competence at the time of commission of the crime. Nor can he come to this Court now with assertions that he was under the influence of drugs (medication for his mental illness) during trial and sentence. [5] The trial court, the prosecuting attorney, his stand-by "ineffective" appointed counsel, and even the voluble Edwards himself, raised no question as to his capacity to stand trial, or his condition at the sentencing hearing. The printed record suffices to demonstrate appellant's intelligent participation in the proceedings.

The principal point urged by Edwards is that the date of his examination by Lloyd

1. As stated in appellant's brief to the magistrate, these are (1) mental incompetence before and during trial; (2) ineffective assistance of counsel; (3) denial of substituted counsel; (4) denial of access to law library; (5) denial of handwriting expert; (6) inaccurate presentence report; (7) consecutive sentences violate Eighth Amendment; (8) judicial vindictiveness; (9) sentence not proportional to sentences of co-defendant.

2. Grounds (5) and (6). To some extent (7), (8), and (9) are also pre-empted by the earlier ruling that "the claim, that the trial judge ... abused his discretion in imposing sentence, is unsupported by the record." 716 F.2d at 826. In any event our own review of the record reveals no impropriety and the sentence is well within the statutory limits. Co-defendants need not necessarily receive the same sentence. The degree of culpability may be taken into account by the sentencing judge in his discretion. Appellant's past criminal record was substantial.

3. The judge informed Edwards "if you want to go out and retain private counsel, you may do so, but I do not intend to substitute somebody to represent you for Ms. Donovan." (Tr. 276.) Appellant's decision to proceed *pro se* also disposes of ground (4). When counsel is offered, the alternative of a library is not mandatory.

*Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Hooks v. Wainwright,* 775 F.2d 1433, 1435 (11th Cir. 1985).

4. The leading cases representing conflicting attitudes towards mental defect as affecting criminal responsibility are *Durham v. U.S.,* 214 F.2d 862 (D.C.Cir.1954), and *McNaghten's Case,* 10 Cl. & Fin. 200 (H.L.1843). Edwards discusses the merits of his insanity defense at length (Appellant's Brief p. 10), although he never raised that defense at trial, and although he admits that a determination of competency to stand trial did not preclude raising an insanity defense with respect to his competency at the time of the offense. Appellant's Reply Brief, p. 10. (References to appellant's briefs are to the *pro se* briefs. With all respect, the excellent briefs of appointed counsel in this Court surpass the perceptive and often eloquent *pro se* briefs only in respect to conciseness, use of standard English, and fewer misprints. The same legal points are covered in both.)

5. As well said by Judge Charles Clark in appellant's earlier bank robbery case "Our function is to review cases, not to try them." 488 F.2d at 1160.

T. Baccus, a psychiatrist, was September 21, 1982, and not early in August, as stated in an affidavit by Mrs. Mary Donovan. On August 5, 1982, appellant changed his earlier guilty plea to not guilty. On August 27, 1982, he requested substitution of other appointed counsel for Donovan, and that being denied, sought and received permission to proceed *pro se*. The trial was October 4–7, 1982. The written report of Dr. Baccus was typed on December 14, 1982. It was filed on March 28, 1983, and Edwards says that he just received a copy of it on March 9, 1984.[6] The doctor did not remember when the examination took place, except that he knew it was before the trial.

It is difficult to see how Edwards was prejudiced in his defense by any of these circumstances, even assuming that he is correct in dating the examination in September. Apparently Dr. Baccus promptly advised the lawyers orally after the examination that in his opinion Edwards was competent to stand trial. Edwards could have put on an insanity defense if he chose to do so, and could have sought postponement to secure the opinion of other psychiatrists in support of his insanity defense with respect to his criminal responsibility at the dates when the offenses with which he was charged were committed. The report of Dr. Baccus, if he had had it, would have done him no good. In the opinion of Dr. Baccus, appellant was legally sane both for purposes of standing trial and for purposes of an insanity defense on the merits based upon appellant's condition at the time the offenses were committed.

■ Not having raised an insanity defense, he was not harmed by the exclusion of certain Veterans Administration documents, cumulative in character, relating to his past medical treatment and medications. These matters were immaterial, irrelevant, and of no probative value. Indeed medications taken by appellant are ordinary tranquilizers used widely by the general public. Their purpose is to improve rather than worsen the patient's condition (and hence his competence to stand trial or conform his conduct to the law).

■ Appellant devotes much argument to attacking his guilty plea. That is all wasted effort and beside the point. It is moot, academic, and water over the dam.[7] For he was permitted to withdraw that plea and enter a plea of not guilty. The jury, however, found him guilty. His only help at this stage of the case is to demonstrate some invalidity in his trial.

Repeatedly he asserts, and seems to hold a firm conviction, that he was deprived of an insanity defense because he did not receive a timely report from Dr. Baccus.[8] He makes much of the fact that the examination by Dr. Baccus took place on September 21, 1982, whereas the doctor's report is dated December 14, 1982, and does not indicate the date of the examination. The doctor remembers only that it took place before the trial.

■ Even accepting appellant's date of September 21, 1982, as correct[9] the psychiatrist's determination that Edwards was competent to stand trial was made before the trial began on October 4, 1982. Its late filing in no way invalidated the trial. Edwards himself does not dispute the fact that the contents of the psychiatrist's re-

---

6. Appellant's brief in this Court, p. 18.

7. It is similarly vain for Edwards to argue that counsel on his original direct appeal, Jay L. Strongwater, Esq., was also incompetent. Reply Brief, p. 12.

8. See, *e.g.*, appellant's brief in this Court, p. 12: "If Petitioner had known the truth of Dr. Baccus report, prior to trial, he could have pursuit [*sic*] an insanity defense, due to the fact that Dr. Baccus did not make his 'report' known to the

court until March 23, 1983, petitioner was unable to pursuit [*sic*] an insanity defense without having Dr. Baccus 'report' at hand." At p. 14, Edwards says: "petitioner was unable to pursuit [*sic*], an insanity defense until he could receive a copy of Dr. Baccus report."

9. In a letter dated "9–20–82" from Edwards to Donovan (Record Excerpts) he says "I called your office on 9–17–82 ... to tell you that the doctor has not been out yet to visit me."

port constitute a finding that appellant was competent to stand trial.[10]

As appellant acknowledges, we are not concerned here with a disciplinary proceeding against appellant's court-appointed counsel for mistakenly stating in an affidavit the date of the examination of Edwards by Dr. Baccus. Nor are we concerned with a contempt proceeding against Dr. Baccus for failing to file his written report with the Court "as soon as possible prior to August 9, 1982" as directed by Magistrate John E. Daugherty's order dated July 28, 1982; nor with any prosecution against Dr. Baccus for falsifying documents in connection with his claim for payment for his services performing the examination.[11]

■ We are concerned only with whether Edwards was prevented from asserting an insanity defense, resulting in fundamental unfairness of his trial, by reason of any inaccuracy or delay in filing the report of Dr. Baccus. And obviously he was not so prevented from pursuing an insanity defense if he wished to do so. He chose not to. The report of Dr. Baccus would have been of no help to him; Dr. Baccus was of the opinion that Edwards "was not experiencing a psychiatric disorder of such a nature as to interfered [sic] with his capacity to conform his conduct to the law. Further, it is my impression that he did possess sufficient capacity to appreciate the nature and consequences of his acts." [12]

From his experience in the bank robbery case in 1974 Edwards knew the difference between a psychiatric examination under 18 U.S.C. 4244, pursuant to which Dr. Baccus had been appointed,[13] which is to be

reported to the Court and all counsel, and one under 18 U.S.C. 3006A(e), which is for tactical use in preparing a defense and is to be reported in confidence to defendant and his counsel alone. See *U.S. v. Edwards, supra,* 488 F.2d at 1162. Appellant in his brief in this Court, p. 36, clearly explains the distinction. Yet Edwards, after assuming his own defense *pro se,* did not request the appointment of a defense psychiatrist or take any steps to raise a full-blown insanity defense.

■ Edwards contends that somehow it was the duty of the trial court *ex officio* to raise an insanity defense for him.[14] But defense strategy and tactics are a matter for decision by defendant and his counsel, without interference by the Court.

■ Edwards also argues that his mental condition may fluctuate from day to day. Hence an examination two weeks before trial (on September 21, 1982) would not be evidence of his condition at the time of trial (October 4, 1982).[15] Perhaps "a couple of days prior to trial" might have been a reasonable time.[16] But basically he demands that a psychiatrist be present in court all through the trial, in order to monitor any change in appellant's condition.[17]

Obviously no interpretation of the Constitution requires such an exacting and impracticable standard, which would "stagnate the wheels of justice" and totally paralyze the orderly administration of justice.

After a complete examination of the entire record, including the District Court transcript, we are unable to find any lack of fundamental fairness in the trial, conviction, and sentence which appellant received.

---

10. "The information contained in the affidavit of Ms. Donovan relating to Dr. Baccus' findings is correct. The dispute is with the date this examination occurred." Appellant's brief in this Court, p. 33.

11. Appellant's brief in this Court, pp. 16, 32. Edwards would infer that the doctor may have falsified the date of the examination or the time spent. Edwards says the examination took only 20 minutes, not two hours. Record excerpts, Edwards to Baccus, October 10, 1984.

12. Record excerpts, Baccus to Donovan, March 28, 1983.

13. Donovan's motion of July 22, 1982, refers to 18 U.S.C. 4244 (as it then stood before the revisal on October 12, 1984; for text see 488 F.2d at 1159) and not to 18 U.S.C. 3006A(e).

14. Appellant's brief in this Court, p. 8

15. Reply brief, p. 25.

16. Reply brief, p. 29.

17. Reply brief, p. 26.

Indeed, one reading the transcript of the trial is impressed both with the ability displayed by appellant and the fairness and helpfulness shown by the prosecuting attorney as well as the trial judge. The record discloses also that in effect Edwards himself withdrew his request for a handwriting expert (Ground 5 on appeal) when the Court pointed out that anyone could see, and the jury could itself confirm by comparison, that it was Lowe who signed the name of the non-existent Dr. Jacobs. This was the only point Edwards wished to establish by using an expert witness. Of course the point is really of no material importance to the case, but in any event Edwards suffered no harm or prejudice.[18] The same is true of documents from the Veterans Administration showing past psychiatric treatments received by Edwards as a Vietnam veteran. Edwards twice decided not to offer these exhibits, and the Court finally concluded, correctly, to exclude them as cumulative of facts already in the record and not of any substantial value to the defense.[19]

Accordingly, the judgment of the District Court is

AFFIRMED.

---

**18.** Transcript, Vol. VII, pp. 28–30.

**19.** Transcript, Vol. VII, pp. 31–34, 39–41.