[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14663
_____

D.C. Docket No. 3:11-cr-00054-SLB-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY WALTER DENTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 28, 2013)

Before CARNES, Chief Judge, TJOFLAT, Circuit Judge, and EVANS,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable Orinda D. Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

Ricky Walter Denton, after electing to proceed pro se with standby counsel, was convicted by a jury of the armed robbery of the First Southern Bank in Ford City, Alabama, in violation of 18 U.S.C. § 2113(a) and (d), and brandishing a firearm during that federal crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Denton, now with the aid of court-appointed counsel, appeals his convictions on numerous grounds, contending that: (1) the district court violated his Sixth Amendment right to self-representation under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525 (1975), by limiting his access to the court's law library and legal materials; (2) the district court erred in denying his motion to suppress evidence seized during the searches of his hotel room and apartment; (3) the government violated the Jencks Act, 18 U.S.C. § 3500, by failing to timely disclose the grand jury testimony of one of the investigating officers, FBI Special Agent Patrick Stokes; (4) the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt; and (5) the district court erred in denying his request to subpoena an unnamed correctional officer as a rebuttal witness. Relying on post-judgment interrogatory responses from two prosecution witnesses, which were first submitted to the district court in support of his still pending motion for a new trial based on newly discovered evidence, Denton also alleges that the government committed various acts of misconduct warranting reversal of his convictions.

2

I.

Denton first contends that the district court violated his Sixth Amendment right to self-representation by denying him "meaningful access" to a law library or legal materials in preparation for his jury trial. He asserts that, at a minimum, the right to self-representation prohibits courts from imposing unjustified restrictions on a pro se defendant's access to readily available legal materials attainable "through a de minimis, reasonable accommodation," and that the district court violated that right by imposing "unnecessary and extreme restrictions" on his access to such materials.

While awaiting trial, Denton was housed in a county jail that lacked a law library. Before granting his request to proceed pro se, the magistrate judge repeatedly urged Denton to accept the aid of counsel and cautioned him about the disadvantages of self-representation, including the difficulties he would face in gaining access to legal materials and the fact that he could not expect to visit the district court's law library. With full knowledge of the consequences of proceeding without court-appointed counsel, Denton remained adamant about representing himself. Even so, and despite his earlier warnings, the magistrate judge allowed Denton to be brought to the United States Marshals' office in the courthouse on a daily basis for a two-week period, where he could review discovery and request legal materials from the court's law librarian. During those

3

visits, Denton was given access to treatises on federal trial procedures, trial techniques, and Fourth Amendment issues. He was also provided with copies of the applicable criminal statutes, rules of evidence, and rules of criminal procedure. Although the district court judge eventually put an end to Denton's daily, escorted visits to the courthouse, she did not categorically deny him access to legal materials that he reasonably required in order to prepare for trial. The court informed Denton that, instead of routine visits to the courthouse, he could file requests for specific legal materials that were relevant to the remaining trial proceedings. On one of the few occasions where Denton actually complied with the court's instruction instead of filing general requests for access to a law library or legal materials, he was permitted to visit the courthouse to view the specific materials he had requested.

Under the Sixth Amendment, as interpreted in Faretta, criminal defendants have a right to waive the assistance of counsel and represent themselves when they voluntarily elect to do so with knowledge of the disadvantages of self-representation. Faretta, 422 U.S. at 807, 835, 95 S.Ct. at 2527, 2541. Nothing in Faretta or the Sixth Amendment, however, expressly establishes that a defendant who has knowingly elected to proceed pro se has a right of access to a law library or legal materials. See Kane v. Garcia Espita, 546 U.S. 9, 10, 126 S.Ct. 407, 408 (2005) (noting, in the context of habeas review under 28 U.S.C. § 2254, that

4

"Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant" and so does not "clearly establish" a pro se defendant's right to access a law library). Faretta itself recognized that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." 422 U.S. at 835, 95 S.Ct. at 2541.

We have held that a pro se criminal defendant has no constitutional right of access to a law library or legal materials where counsel has been offered. Edwards v. United States, 795 F.2d 958, 961 nn. 1 & 3 (11th Cir. 1986) (rejecting a collateral challenge to a criminal conviction based on the denial of library access while the petitioner proceeded pro se at trial, and concluding that "[w]hen counsel is offered, the alternative of a library is not mandatory"). Although Denton takes issue with the soundness and adequacy of our decision in Edwards, we are bound by that decision under the prior panel precedent rule unless and until it is overruled by the Supreme Court or this Court sitting en banc. Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir. 2000); see also Smith v. GTE Corp., 236 F.3d 1292, 1302–03 (11th Cir. 2001) (rejecting a "wrong result" or "overlooked reason" exception to the prior panel precedent rule); Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999) (responding to the argument that the reasoning of a prior panel decision was "unclear and inadequate to support its holding" by stating that "[w]e have no occasion to pass on that criticism, because we are bound by the [prior

panel] decision regardless of whether we agree with it"). Even assuming that a Faretta defendant has a right of reasonable access to legal materials, as Denton argues, under the circumstances of this case that right was not violated. There is no merit to Denton's contention that the district court imposed unjustified and extreme restrictions on his ability to access legal materials relevant to the criminal proceedings against him.

## II.

Denton challenges the denial of his motion to suppress evidence seized from his hotel room and apartment, arguing that the district court erred in finding that he had voluntarily consented to the searches of those premises. Denton maintains that he was under the influence of drugs and alcohol, and otherwise intimidated by the presence of six law enforcement agents, when he signed written consent forms to search his hotel room and apartment on December 18, 2009.

In reviewing the denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its application of the law to those facts de novo. United States v. Gibson, 708 F.3d 1256, 1274 (11th Cir. 2013). A warrantless search of property is valid under the Fourth Amendment if it is preceded by a defendant's voluntary consent or the consent of a third party who has "common authority over or other sufficient relationship to the premises or

effects sought to be inspected." United States v. Harris, 526 F.3d 1334, 1339 (11th Cir. 2009) (quotation marks omitted).

In challenging the denial of his motion to suppress the evidence seized from his apartment, Denton fails to differentiate between the two searches of it. The first of those searches, which was executed on December 18, 2009, with the written consent that Denton now claims was involuntary, yielded no incriminating evidence that was introduced at trial. Only the second of the two searches of his apartment, which was conducted two months later while Denton was in police custody, resulted in the seizure of evidence introduced at trial. That search was based upon the consent of Hollie Anderson Todd, who lived there and whose name, rather than Denton's, was on the lease at that time. The district court correctly denied the motion to suppress as to the evidence from that search because of Todd's consent. See Harris, 526 F.3d at 1339.

There was also a search of Denton's hotel room on December 18, 2009, which uncovered evidence that was introduced at trial. The district court denied the motion to suppress that evidence after correctly finding that both Denton and the co-occupant of the room, James Wimberly, had given their voluntary consent. Denton argues that his own consent was not voluntary but that does not matter because Wimberly's consent was enough to justify the search. See id.

7

III.

Denton next contends that the government violated the Jencks Act by failing to timely disclose Special Agent Stokes' grand jury testimony. Denton asserts that he requested Jencks Act material on Agent Stokes during the suppression hearing but did not receive a complete copy of Stokes' grand jury testimony "until well after the trial." He maintains that the delay in disclosure prejudiced his defense at trial because the grand jury transcripts revealed "material inconsistencies" between Agent Stokes' testimony before the grand jury and his testimony at trial.

The Jencks Act, which is incorporated into Federal Rule of Criminal Procedure 26.2, shields the statements of government witnesses, including their grand jury testimony, from discovery or inspection until the "witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a), (e)(3). Once a government witness testifies on direct examination, whether at trial or at a suppression hearing, the court must, on the defendant's motion, order the government to produce any statement by that witness in its possession "that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a), (g); see 18 U.S.C. § 3500(b). The underlying purpose of the Jencks Act is to enable a defendant to impeach a government witness on cross-examination by bringing out any variances between his trial or hearing testimony and his earlier statements. United States v. Prieto, 505 F.2d 8, 11 (5th Cir. 1974); see also United States v.

8

Delgado, 56 F.3d 1357, 1364 (11th Cir. 1995) ("Jencks Act statements are strictly limited to impeachment.").

Even assuming that Denton properly requested Jencks Act material on Agent Stokes during the suppression hearing, which is by no means evident from the record, his claim nevertheless fails. The only Jencks Act statements the government could have been obligated to turn over during the suppression hearing would be statements relating to the subject matter of that hearing. See 18 U.S.C. § 3500(b) (requiring the government to produce a statement by its own witness "which relates to the subject matter as to which the witness has testified" on direct examination). But Denton does not contend that any of Agent Stokes' grand jury testimony was of that nature.

Instead, Denton argues that the government's failure to turn over Agent Stokes' grand jury testimony at the suppression hearing hindered his ability to impeach Stokes' testimony at trial. That argument does not make sense in light of the Jencks Act. The government had no Jencks Act obligations with respect to Agent Stokes at the time of trial because Stokes was not called as a government witness, but as a witness for the defense. In addition, the portions of Agent Stokes'

grand jury testimony that Denton highlights on appeal are not inconsistent with Stokes' later testimony at trial and thus lack any impeachment value anyway.[1]

## IV.

Denton argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was the masked man who robbed the First Southern Bank at gunpoint on the afternoon of December 17, 2009.  He notes that one of the government's witnesses, Forrest Sims, described the bank robber as an African-American man with a "gold grill" and that no evidence directly linking Denton to the bank robbery was found at his hotel room, apartment, or carwash business.  Although he acknowledges that several witnesses implicated him as the bank robber, Denton contends that the testimony of those witnesses was, for one reason or another, unworthy of belief.

We review de novo the sufficiency of the evidence underlying a conviction, viewing the evidence in the light most favorable to the jury's verdict with all reasonable inferences and credibility choices drawn in its favor.  United States v.

---

[1] In his reply brief on appeal, Denton asserts that he could have used Agent Stokes' grand jury testimony to impeach Stokes' testimony at the suppression hearing.  Because he did not raise that argument in his opening brief, he has abandoned it.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008) ("It is well settled in this circuit that an argument not included in the appellant's opening brief is deemed abandoned.").  In any event, the belated argument rests on the unsupported assertion that Agent Stokes informed the grand jury that Denton was arrested before, and not after, he signed the written consent-to-search forms.  The portion of Stokes' grand jury testimony cited by Denton in support of this assertion says no such thing and we have been unable to find any such testimony in the available grand jury transcripts.

White, 663 F.3d 1207, 1213 (11th Cir. 2011).  Our inquiry is limited to determining whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  United States v. Broughton, 689 F.3d 1260, 1276 (11th Cir. 2012).  It is not necessary that the evidence "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  Id. at 1277.  The jury is free to choose among "the reasonable conclusions to be drawn from the evidence presented at trial," and we "must accept all reasonable inferences and credibility determinations made by the jury."  Id.

The evidence presented at trial, when viewed in the light most favorable to the jury's verdict, weaves a compelling narrative of the bank robbery with Denton at its center.  Shortly after 4:00 p.m. on December 17, 2009, witnesses saw a clean-shaven white male with dirty blonde hair and sporting a yellow-hooded coat, blue jeans, and a backpack approach the entrance of the First Southern Bank.  As he entered the bank, the man donned a black ski mask with yellow coloring around the mouth and eyes, brandished a small silver gun, told everyone to get down on the floor, and ordered the bank tellers to empty their cash drawers.  He then commanded one of the three tellers on duty that day, Kayla Lash, to hand over the keys to her black Geo Tracker.  Latisha Clay, another bank teller, noticed the robber's distinctively "slow," stuttering, and "not altogether normal" speech

11

pattern, and at trial she unequivocally identified Denton as the bank robber by his voice.

As the bank robber fled in Lash's car with $8,928, he nearly collided with another motorist, Forrest Sims, and then pulled into an abandoned service station beside a green Ford Mustang. Although Sims, based on his limited view of the driver, described the bank robber as "a black man with a gold grill" wearing a "yellow hoodie," the jury was not obligated to credit Sims' description as accurate, particularly in light of the testimony of other witnesses identifying the robber as a clean-shaven white male — a description matching Denton's physical characteristics. Wimberly, Denton's friend, coworker, and initially unwitting accomplice, was waiting at the abandoned service station in Denton's green Ford Mustang for Denton to arrive. Wimberly's trial testimony tied Denton to the clothing and small silver gun captured on the bank's surveillance system and described by other witnesses, and he identified Denton as the source of the money recovered by law enforcement agents from the home of a mutual acquaintance, which included several "bait bills" traceable to the First Southern Bank.

Following his arrest, Denton confessed his role in the bank robbery to a fellow inmate, James Murphy, and urged him to contact one of Denton's sons to fabricate an alibi for Denton for the time of the robbery. Denton also persuaded another inmate, Charles Brown, to sign a false confession and, to give that

12

confession an air of credibility, he provided Brown with specific details of the bank robbery, such as the fact that the bank robber wore a ski mask and a yellow sweatshirt. Murphy and Brown testified to those facts at trial and assured the jury that they had not received or been promised anything in exchange for their cooperation.

The combined testimony of the government's witnesses was more than sufficient to allow the jury to conclude beyond a reasonable doubt that Denton was the person who had robbed the First Southern Bank. Denton's sufficiency challenge essentially boils down to a claim that the jury should have credited Sims' description of the bank robber while wholly discounting the testimony offered by Wimberly, Murphy, Brown, Clay, and other government witnesses. The jury, however, was entitled to believe the testimony it believed, and we must accept the jury's credibility determinations. See United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) ("[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant.").

## V.

Denton asserts that the district court abused its discretion when it denied his request to subpoena a rebuttal witness, an unnamed correctional officer who apparently could have testified that Charles Brown was "mentally challenged" and "always telling on people" in the jail where he and Denton were incarcerated.

A defendant's request for a subpoena must comply with Federal Rule of Criminal Procedure 17(b), which directs district courts to issue a subpoena at government expense "for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b) (emphasis added). Because Denton has not demonstrated that his subpoena request complied with Rule 17, he has not established that it was an abuse of discretion to deny that request. See United States v. Rinchak, 820 F.2d 1557, 1565 (11th Cir. 1987) ("The grant or denial of a Rule 17(b) motion is committed to the discretion of the district court and is subject to reversal on appeal only upon a showing of abuse of that discretion."). Less than one week before trial, Denton filed a motion to subpoena a witness to impeach the anticipated testimony of Charles Brown, but he failed to identify that witness by name in the motion he filed. Even assuming that the district court was somehow obligated to grant that motion, Denton cannot show that the denial of it was anything more than harmless error. The government presented abundant evidence of guilt apart from Brown's trial testimony. Cf. United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007) (explaining that an erroneous evidentiary ruling is harmless if "sufficient evidence uninfected by [the] error supports the verdict, and the error did not have a substantial influence on the outcome of the case.") (quotation marks omitted).

14

VII.

Finally, Denton has a motion for a new trial based on newly discovered evidence pending in the district court. It concerns the post-verdict interrogatory responses of Jonathan and Hollie Todd, which he contends show that the government engaged in various forms of misconduct, including improperly pressuring the Todds to testify at trial and failing to disclose the contents of their pre-trial interviews with law enforcement agents. Until the district court rules on that motion, there is nothing for us to review concerning it. It is not properly before us in this appeal.

**AFFIRMED.**